IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MIRACLE CARE HOSPICE, INC.**                                                              **PLAINTIFF**

**V.**                                                           **CIVIL ACTION NO. 3:12-CV-495-CWR-FKB**

**KATHLEEN SEBELIUS, SECRETARY**
**UNITED STATES DEPARTMENT**
**OF HEALTH & HUMAN SERVICES**                                                          **DEFENDANTS**

## ORDER GRANTING MOTION TO DISMISS

Before the Court is the Defendant's Motion to Dismiss [6] for lack of jurisdiction and failure to state a claim. The Defendant supports her motion with her memorandum of law [7] and reply [15]. The Plaintiff opposes the motion with its response [12] and memorandum [13]. Having reviewed the parties' submissions and relevant law, the Court finds that the motion should be granted.

### I. BACKGROUND

Medicare is a government program that provides health coverage benefits for elderly and disabled individuals, among others. *See* 42 U.S.C. §§ 1395 *et seq*. The Secretary of the Department of Health and Human Services ("the Secretary") administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services ("HHS").

The Medicare hospice benefit is designed to provide pain relief, comfort, and emotional and spiritual support to patients who have a terminal diagnosis. Qualified beneficiaries who elect hospice care agree to forego curative treatment for their terminal condition.

The Medicare program pays a hospice provider on a per diem basis according to the number of patients being served. However, the Medicare Act imposes a statutory cap on the

amount of Medicare payments a hospice provider is entitled to in a given twelve-month accounting year. 42 U.S.C. § 1395f(i)(2)(A). The hospice cap is calculated after the end of the accounting year by multiplying the applicable "cap amount," which is defined in § 1395f(i)(2)(B), by the "number of medicare beneficiaries in the hospice program in that year." *Id.* § 1395f(i)(2)(A). If Medicare payments to the hospice provider exceed the statutory cap for an accounting year, the hospice provider is required to return the excess funds to Medicare. 42 C.F.R. § 418.308(d).

With regard to the calculation of the hospice cap, 42 U.S.C. § 1395f(i)(2)(C) provides that

> the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who [have elected to receive hospice benefits] and have been provided hospice care by (or under arrangements made by) the hospice program under this part of the accounting year, such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.

42 U.S.C. § 1395f(i)(2)(C). This method of calculating the number of beneficiaries is referred to as the "patient-by-patient proportional methodology."

At issue in this case is the manner in which the number of Medicare beneficiaries is calculated. From 1983 until 2011, in accordance with 42 C.F.R. § 418.309(b)(1) ("the Regulation"), a streamlined method for calculating the number of hospice beneficiaries was used instead of the patient-by-patient proportional methodology. Based on the provisions of the Regulation, a hospice beneficiary was allocated to the hospice cap calculation for the accounting year in which he would likely receive most of his hospice care based on the aggregate data on the

2

average length of days under hospice care.[1]  However, beginning in 2007, numerous hospice providers objected to the Regulation, arguing that the Regulation's streamlined method for calculating the number of Medicare beneficiaries deviated from the patient-by-patient proportional methodology prescribed in § 1395f(i)(2)(C) of the Medicare Act.  *See, e.g.*, *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693 (5th Cir. 2011); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011).  Consequently, on April 14, 2011, CMS issued CMS-1355-R ("the Ruling"), which states the following:

> This Ruling provides notice of CMS's determination to grant relief to any hospice provider that has a properly pending appeal . . . in any administrative appeals tribunal (that is, the Provider Reimbursement Review Board (PRRB), the Administrator of CMS, the Medicare fiscal intermediary hearing officer, or the CMS reviewing official) that seeks review of an overpayment determination for any hospice cap year (the period November 1 to October 31) ending on or before

---

[1] The Regulation in effect prior to October 1, 2011, reads as follows:

The hospice cap amount is calculated using the following procedures:

(a) The cap amount is $6,500 per year and is adjusted for inflation or deflation for cap years that end after October 1, 1984, by using the percentage change in the medical care expenditure category of the Consumer Price Index (CPI) for urban consumers that is published by the Bureau of Labor Statistics. This adjustment is made using the change in the CPI from March 1984 to the fifth month of the cap year. The cap year runs from November 1 of each year until October 31 of the following year.

(b) Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes—

   (1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

   (2) In the case in which a beneficiary has elected to receive care from more than one hospice, each hospice includes in its number of Medicare beneficiaries only that fraction which represents the portion of a patient's total stay in all hospices that was spent in that hospice. (The hospice can obtain this information by contacting the intermediary.)

42 C.F.R. § 418.309 (2010).

3

> October 31, 2011 by challenging the validity of the beneficiary counting methodology set forth in 42 CFR 418.309(b)(1). In this regard, such a provider's hospice cap determination (as defined under 42 U.S.C. 1395f(i)(2)) for any cap year ending on or before October 31, 2011 and for which a timely appeal has been filed and is otherwise properly pending (as discussed herein) will be recalculated using a patient-by-patient proportional methodology for counting the number of Medicare beneficiaries as opposed to the methodology currently set forth in 42 CFR 418.309.

Medicare Program; Hospice Wage Index for Fiscal Year 2012, 76 Fed. Reg. 26731-01 (May 9, 2011). For the purposes of the Ruling, "a 'properly pending' appeal is one in which a provider has met all timeliness requirements set forth in section 1878 of the Social Security Act, Medicare regulations and other agency publications, guidelines, rulings, orders or rules." *Id.* at 26733.

Eventually, the Regulation was amended to require use of the patient-by-patient proportional methodology for cap years ending October 31, 2012, and all subsequent cap years, unless the hospice care provider elected to have its aggregate cap calculated using the streamlined methodology. 42 C.F.R. § 418.309(d)(2) (effective Oct. 1, 2011). However, under the Amended Regulation, "[f]or cap years ending October 31, 2011 and for prior cap years, a hospice's aggregate cap is calculated using the streamlined methodology," unless the hospice care provider has not yet received the final cap determination for a cap year and elects to have the cap calculated using the proportional methodology, or unless the provider "filed a timely appeal regarding the methodology used for determining the number of Medicare beneficiaries in its cap calculation for any cap year . . . ." *Id.* § 418.309(d)(1).

Miracle Care Hospice, Inc., a Medicare certified hospice provider located in Jackson, Mississippi, filed this action on July 16, 2012, seeking a determination that the manner in which its hospice caps were calculated for the hospice cap years ending in 2005 to 2008 was contrary to the plain language of 42 U.S.C. § 1395f(i)(2)(C), and a writ of mandamus requiring the Secretary

4

to order the fiscal intermediary, Palmetto GBA ("Palmetto"), to reopen the cap determinations at issue and recalculate payment determinations in accordance with the Medicare Act. *See* Docket No. 1 (Complaint). Miracle Care alleges that in 2007, 2009, and 2010, Medicare demanded repayment from Miracle Care based on "[Medicare's] improper and unlawful calculation of Miracle Care's cap obligation" for the hospice cap periods ending in 2005 to 2008. *Id.* at 9-10. The repayment amounts that Medicare demanded were $307,041.66, $990,118.00, $357,032.00, $46,418.00, for hospice cap years ending in 2005, 2006, 2007, and 2008, respectively. *Id.*

Miracle Care alleges that its owners made a lump sum payment of $310,240.01 in April 2007 to satisfy its repayment obligations for the cap period ending October 31, 2005, and in doing so exhausted its revenues and savings so that it could no longer make further lump sum payments. As a result, in December 2007 and several times throughout 2008, Miracle Care contacted Palmetto to request an extended repayment plan for money owed from fiscal year ending October 31, 2006. However, Miracle Care was not granted an extended payment plan, and on September 24, 2008, in order to satisfy Miracle Care's obligations to Medicare, Medicare began withholding 100 percent of any Medicare funds due to Miracle Care.

By a letter dated November 12, 2009, from Miracle Care's Administrator, Lorita Lee, Miracle Care attempted to "appeal[] the notice of aggregate hospice cap amount[s]" to the Provider Reimbursement Review Board ("PRRB") for cap periods ending October 31, 2006, and October 31, 2007, due to the fact that the caps were calculated using the streamlined method provided in the Regulation rather than the proportional method outlined in the Medicare statute. Docket No. 12-2. Miracle Care alleges that Lee sent a similar letter of appeal regarding the hospice cap calculations for fiscal years ending in 2005 and 2008 on May 18, 2010. *See* Docket

5

No. 12-3. Medicare claims it did not receive the letter, while, according to Miracle Care, Palmetto indicated that it received the letter. Docket No. 1, at 12 & n.1, 13-14.

On September 27, 2010, the PRRB informed Miracle Care that its appeal of the 2006 cap repayment determination was dismissed because Miracle Care did not file an appeal with the PRRB within 180 days of receiving the repayment demand on November 29, 2007, and did not demonstrate good cause for an extension of the 180-day deadline. Docket No. 12-5. Miracle Care's appeal of the 2007 hospice cap calculations was dismissed on August 26, 2010, because Miracle Care had not submitted its preliminary position paper by the August 1, 2010, deadline set by the PRRB. Docket No. 12-4.

On March 24, 2011, Miracle Care, through counsel, contacted Palmetto, requesting that the intermediary hospice cap determinations at issue be reopened and recalculated using the proportional methodology. Palmetto denied the request on April 13, 2011. The next day, on April 14, 2011, Medicare issued the Ruling, after which Miracle Care again wrote Palmetto on June 17, 2011, requesting that Palmetto reopen its initial cap determination based on the Ruling. Miracle Care alleges that Palmetto stated via telephone that it could not reopen the cap determinations for the relevant years pursuant to the Ruling because it could not find any properly pending appeals for those fiscal years.

Counsel for Miracle Care wrote the PRRB on September 6, 2011, requesting information relating to Miracle Care's appeals and requesting that the appeals be remanded to Palmetto so that the hospice caps could be calculated using the proportional methodology. The letter specifically noted that Palmetto had indicated that it received a copy of the appeal notice for fiscal years ending 2005 and 2008. The PRRB responded on September 16, 2011, stating that

6

the appeals for fiscal years ending 2006 and 2007 had been closed and that there was no record of a notice of appeal for fiscal years ending in 2005 and 2008.

After Miracle Care commenced the present action, the Secretary moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that this Court lacks jurisdiction over the subject matter of Plaintiff's Complaint because (1) Plaintiff was required to channel its challenge to the method of hospice cap calculations through the administrative appeals process before seeking judicial review, and (2) mandamus is inapplicable to the Plaintiff's claims because Plaintiff had a means of contesting the hospice cap determinations. Miracle Care opposes the motion.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal on the basis of a district court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The plaintiff, as the party asserting jurisdiction, bears the burden of proof that jurisdiction does exist. *Id.* However, if the defense only makes a "facial attack" upon subject matter jurisdiction by "merely fil[ing] a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A defendant may make a "factual attack" upon the court's subject matter jurisdiction over the lawsuit by submitting "affidavits, testimony, or other evidentiary materials." *Id.* When a defendant makes a factual attack, the plaintiff must also "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* at 523. Dismissal on the basis of lack of subject matter jurisdiction is appropriate "if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (citation and quotation marks omitted).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is warranted when the plaintiff fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted).

### III. DISCUSSION

The Secretary asserts that because Plaintiff did not exhaust the administrative appeal process regarding the hospice cap calculations about which Plaintiff complains, this Court lacks

jurisdiction over this action. Further, the Secretary argues that dismissal is appropriate because despite Miracle Care's request for the issuance of a writ of mandamus, Miracle Care cannot satisfy the requirements for a writ of mandamus. Each of the Secretary's arguments will be discussed in turn.

    *A.    Administrative Exhaustion*

Miracle Care asserts that this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, which states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, "there is no general federal question jurisdiction under 28 U.S.C. § 1331 in Medicare reimbursement cases." *Lion Health Servs.*, 635 F.3d at 701. The Medicare Act incorporates by reference 42 U.S.C. § 405(h) of the Social Security Act, and therefore provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided," and "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h); *see* 42 U.S.C. § 1395ii. The Medicare Act requires a provider that seeks a federal court's review of a hospice cap determination to first channel its objections through the administrative processes provided for in the Medicare Act and the relevant regulations. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

The regulation relating to administrative appeals by a hospice provider states the following:

> A hospice that believes its payments have not been properly determined in accordance with these regulations may request a review from the intermediary or

>   the Provider Reimbursement Review Board (PRRB) if the amount in controversy is at least $1,000 or $10,000, respectively. . . . The PRRB, subject to review by the Secretary under § 405.1875 of this chapter, shall have the authority to determine the issues raised. The methods and standards for the calculation of the statutorily defined payment rates by CMS are not subject to appeal.

42 C.F.R. § 418.311. Additionally, the Medicare Act and its regulations state that if a hospice provider wishes to appeal a hospice cap determination made by a fiscal intermediary, the provider must file its appeal with the PRRB within 180 days of receipt of a notice of determination. 42 U.S.C. § 1395oo(a)(3); 42 C.F.R. § 405.1811(a)(3)(i). After the provider receives a "final decision of the [PRRB], or of any reversal, affirmance, or modification by the Secretary," the provider may seek judicial review of the hospice cap determination by commencing a civil action "within 60 days of the date on which notice of any final decision by the Board or any reversal, affirmance, or modification by the Secretary is received." 42 U.S.C. § 1395oo(f)(1).

>   The Medicare Act also provides for "expedited judicial review":
>
>   When the provider challenges the validity of a regulation itself, however, the PRRB lacks the authority to declare regulations invalid. *See Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 406, 108 S. Ct. 1255, 99 L.Ed.2d 460 (1988) ("Neither the fiscal intermediary nor the Board has the authority to declare regulations invalid."). In this situation, once the PRRB has determined "that it is without authority to decide the question" because the "action of the fiscal intermediary . . . involves a question of law or regulations," the provider may obtain "expedited judicial review." 42 U.S.C. § 1395oo(f)(1). Thus, the provider brings an action against the Secretary in federal district court, which the court tries pursuant to the standards of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"). *See id.* § 1395oo(f)(1); 42 C.F.R. § 405.1842.

*Lion Health Servs.*, 635 F.3d at 697.

The exception to the channeling requirement is "where application of §§ 1395ii and 405(h) 'would not lead to a channeling of review through the agency, but would mean no review at all.'" *Nat'l Hospice and Palliative Care Org., Inc. v. Weems*, 587 F. Supp. 2d 184, 194 (D.C.

2008) (quoting *Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852, 859 (D.C. Cir. 2007)). "In other words, if the claimant can obtain judicial review only in a federal suit, § 1395ii will not bar the suit." *Id.* (quotation marks and citation omitted).

Based on the foregoing, this Court has no jurisdiction over this action unless Miracle Care's claims were channeled through the PRRB, or unless Miracle Care had no opportunity for a channeling of review through the Medicare administrative appeal process. Miracle Care argues that its objections to the use of the streamlined method to calculate its hospice caps were not appealable to the PRRB, and that its only option for review was to file an action in federal court. It cites the language in 42 C.F.R. § 418.311, which states, "The methods and standards for the calculation of the statutorily defined payment rates by CMS are not subject to appeal." 42 C.F.R. § 418.311. On this issue, the Court finds persuasive the reasoning and holding of *National Hospice and Palliative Care Organization, Inc. v. Weems*, in which a district court in the District of Columbia concluded that § 418.311 does not preclude administrative appeal of the types of claims brought by Miracle Care. *See* 587 F. Supp. 2d at 193-202. In fact, in the cases on which Miracle Care relies to argue that the streamlined method of hospice cap calculations is improper, each hospice provider channeled its objections through the administrative process before bringing its federal action. *See, e.g.*, *Lion Health Servs.*, 635 F.3d at 698 ("Lion timely filed administrative appeals with the PRRB . . . ."); *Los Angeles Haven Hospice*, 638 F.3d at 652 ("Haven Hospice timely appealed the repayment demand to the PRRB . . . ."). Additionally, in this action, Miracle Care was able to file an appeal with the PRRB for the hospice cap

determinations for fiscal years ending in 2006 and 2007.  Thus, Miracle Care's argument that it could not avail itself of the administrative appeal process is without merit.[2]

The relevant issue, therefore, is whether Miracle Care exhausted its administrative remedies.  Because Miracle Care did not file an appeal with the PRRB regarding the 2006 hospice cap determination within 180 days of receiving the determination and did not show good cause for an extension of the 180-day deadline, Miracle Care failed to exhaust its administrative remedies in accordance with 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835.  *See* Docket No. 12-5.  The Court, therefore, has no jurisdiction over the claims from cap year ending in 2006.  *See Allcare Hospice, Inc. v. Sebelius*, 533 F. App'x 859 (10th Cir. 2013) (unpublished) (affirming district court's holding that it had no jurisdiction to hear provider's challenge to hospice cap determination due to lack of jurisdiction when the PRRB had dismissed the provider's appeal because it was not filed within the prescribed 180-day period for appeal, and the provider failed to show good cause to receive an extension of the time for appeal).

Regarding the hospice cap determinations for fiscal year ending in 2007, Miracle Care initiated the administrative appeal process by sending a letter to the PRRB.  However, Miracle Care allowed its appeal to be dismissed as a result of its failure to meet PRRB's deadlines for submitting supporting documentation.  *See* Docket No. 12-4.  This dismissal was a final decision from which Miracle Care could have sought judicial review by filing an action in federal court.  *See* 42 C.F.R. § 405.1877(a)(3)(i); *Kaiser Found. Hosps. v. Sebelius*, 649 F.3d 1153 (9th Cir.

---

[2] The Court rejects Miracle Care's argument that the doctrine set forth in *Leedom v. Kyne*, 358 U.S. 184 (1958), applies to the present action.  "The *Kyne* doctrine allows parties to invoke federal jurisdiction to seek judicial review of agency action that is *ultra vires*.  The *Kyne* doctrine is of a 'very limited scope' and should be 'invoked only in exceptional circumstances.'"  *Allcare Hospice, Inc. v. Sebelius*, No. CIV-1-365-FHS, 2012 WL 5246512, at *6 (E.D. Okla. Oct. 23, 2012) (citation omitted), *aff'd*, 533 F. App'x 859 (10th Cir. 2013).  The *Kyne*

2011) (affirming PRRB's dismissal of provider's appeal for provider's failure to timely file preliminary position paper); *High County Home Health, Inc. v. Thompson*, 359 F.3d 1307 (10th Cir. 2004) (same); *UHI, Inc. v. Thompson*, 250 F.3d 993 (6th Cir. 2001) (same).  However, Miracle Care was required to file its Complaint within 60 days of the PRRB's August 26, 2010, letter that notified Miracle Care that its claims for cap year 2007 had been dismissed.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(b); *Mercy Hosp. of Laredo v. Heckler*, 777 F.2d 1028, 1034 (5th Cir. 1985) ("A provider may obtain judicial review . . . by a civil action timely commenced.").  Miracle Care did not file its Complaint until July 2012, and thus, its failure to timely file an action renders this Court without jurisdiction to review the PBBR's dismissal of Miracle Care's claims regarding cap year ending in 2007.  *See Kidney Ctr. of Hollywood v. Shalala*, 63 F. Supp. 2d 51, 56-57 (D.D.C. 1999) (determining that the 60-day filing period of § 1395oo(f)(1) is jurisdictional).

Lastly, Miracle Care claims to have filed appeals with the PRRB objecting to the method of calculation of the hospice cap determinations for fiscal years ending in 2005 and 2008.  *See* Docket No. 12-3.  The PRRB informed Miracle Care on September 16, 2011, that the PRRB had no record of a notice of appeal for those years.  Docket No. 1, at 14.  Taking the allegations in the Complaint as true, and assuming that Miracle Care did indeed send a letter of appeal for fiscal years ending in 2005 and 2008, and that the letter was subsequently lost, Miracle Care was nevertheless required to channel its appeal for those years through the administrative procedures before seeking judicial review.  This process may have required Miracle Care to re-file its appeal so that the PRRB could issue a ruling, and if that ruling was unfavorable, Miracle Care could

---

doctrine is inapplicable to Miracle Care's action because Miracle Care cannot show that "denying judicial review would deprive [it] of [any] review at all," or that the Secretary "violated a clear statutory provision."  *Id.* at *6-7.

have sought judicial review by filing a Complaint in federal court within 60 days of the ruling. However, because Miracle Care did not exhaust its administrative remedies with regards to the cap determinations for 2005 and 2008, the Court has no jurisdiction to hear those claims.

> B.   *Writ of Mandamus*

Relying on 28 U.S.C. § 1361, Miracle Care requests that the Court "issue a writ of mandamus requiring that appeals by Miracle Care as to each year be automatically accepted and treated as valid and that Palmetto recalculate the payment determinations in accord with CMS-1355-R." Docket No. 1, at 22. Under the Mandamus Act, "district courts . . . have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). As discussed *supra*, Miracle Care "cannot show exhaustion because it could have pursued alternative means—namely, in the statutory scheme created by § 1395oo(f)(1)—to obtain the relief it sought." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1017 (10th Cir. 2013). Therefore, the Court does not have mandamus jurisdiction over Miracle Care's claims. *See Allcare*, 2012 WL 5246512, at *4 (holding that provider was not entitled to mandamus relief because it could have challenged repayment decisions but failed to timely do so, thereby failing to exhaust all other avenues of relief).

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is GRANTED.

**SO ORDERED**, this the 31st day of March, 2014.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
